<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| **MARK BROWNE,** | : | |
| | : | **Civil No. 23-23399 (JKS)** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | <u>**OPINION**</u> |
| | : | |
| **ROBERT CHETIRKIN,** | : | |
| | : | |
| **Respondent.** | : | |
| | : | |

<u>**SEMPER, District Judge**</u>

      This matter comes before the Court on the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by *pro se* Petitioner Mark Browne ("Petitioner"), a prisoner confined at East Jersey State Prison ("EJSP") in Rahway, New Jersey. ("Pet." ECF No. 1.)  Petitioner asserts two grounds for relief challenging his trial and conviction, including claims of evidentiary error and ineffective assistance of counsel. (*Id.* at 5–11.)  Respondents filed an answer opposing habeas relief. ("Opp'n" ECF No. 7.)  Petitioner filed a reply. ("Reply" ECF No. 10.)  Accordingly, the matter is fully briefed and ready for disposition.

      The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons discussed below, the Court will deny the petition and will not issue a certificate of appealability.

## I.    **FACTUAL BACKGROUND**

The Court defers to the state courts' factual determinations pursuant to 28 U.S.C. §

2254(e)(1) and adopts the facts as set forth by the New Jersey Superior Court, Appellate Division

("Appellate Division"), in its opinion on direct appeal.

> Following up on a 911 call, the North Bergen police found the dead body of a man near the intersection of a major highway, later identified through his fingerprints as Darryl Williams. A detective testified that the hands of the victim were bound by a belt, duct tape, and cell phone charger cord. His head was encased in a bloody pillowcase. A rope was around his neck and his mouth was taped shut with duct tape. According to the detective, it appeared the victim had crawled away from underneath a mattress that was loaded on top with cinderblocks; the mattress had blood on it and there was a trail of blood leading from the mattress to the body. A U-Haul truck that also had blood on it was parked near the mattress.

> An assistant medical examiner testified the victim died from "asphyxia due to obstruction of [the] airway with multiple blunt and sharp-force injuries." The autopsy showed cuts and bruising to his forehead, eyelids, ears, and lips; a hemorrhage in the white of his left eye; chipped teeth; a hemorrhage of the tongue; and contusions to his chest, sides and back. He had six broken ribs. One arm was completely bruised from the shoulder to the elbow. He had injuries to his hands consistent with defensive wounds. He had been cut or stabbed twenty-three times in the head, back, shoulders, arms and feet.

> The victim lived in Newark with his girlfriend, Latoya Mozee. Another detective testified that the police search of her apartment showed bloodstains in the bedroom, stairs and landing. A metal leg was missing from the kitchen table. Kitchen knives were missing.

> Qudeera Adams testified at trial that she learned Latoya Mozee had been beaten up by her boyfriend Darryl Williams. Latoya's injuries were visible. When defendant became aware of this, he said "he was going to knock [Darryl] out and teach him a lesson not to hit girls." Adams testified that defendant drove her and Nydia Mozee (Latoya's sister) to buy duct tape. Defendant had a BB gun in the back of his white Cadillac Escalade. They picked up Kathleen Jones

and then Daeshawn Jennings, known as "Certified." Defendant paid Certified twenty dollars to "knock out" Darryl.

Adams testified that defendant drove the group to Latoya's apartment; Darryl was there. Certified beat him with the metal table leg; defendant tied up Darryl's head, taped his mouth shut and put a pillowcase over his head. They all beat him. When Darryl stopped moving, Adams testified that defendant wrapped him in a blanket and carried him out to the Escalade. Defendant drove them to the U-Haul lot where defendant and Certified deposited Darryl. Adams testified that defendant told the group not to mention any of this to anyone. Defendant drove the group to purchase cleaning supplies. Videotaped evidence showed defendant and Latoya Mozee at a Pathmark store at 2:14 a.m.

Defendant gave a different version of the events. Defendant testified that he was not driving the Escalade on the night of the assault. He worked for a car dealer and earlier that day, he and another employee (co-worker) went to South Jersey in the Escalade to pick up a car. After they brought that back, defendant switched to driving a black sedan while his co-worker kept the Escalade. Defendant was driving the black sedan when—after stopping to pick up Adams and another woman and purchasing some food at the Pathmark—he went to Latoya's apartment for a "gathering." He acknowledged learning that same day that Darryl had beaten up Latoya. Defendant testified that after he used the bathroom at Latoya's, he came out to "madness" because a fight had broken out. He claimed that Darryl had beaten Latoya for a second time that night. He saw Latoya, his coworker and others beating Darryl and said he tried to stop it. He testified that he did assist in holding down Darryl with "six other people in the room" but this was to "get him calmed down and stop everyone from hitting him." Someone put Darryl in a blanket and loaded him in the Escalade. There was blood coming from the blanket and defendant assumed they were taking him to the hospital because somebody mentioned that.

In the early morning, defendant went over to Sharo Willis' house in the black sedan, not the Escalade. Shortly after, Nydia called him because she did not have money to buy cleaning supplies. He met her and others at a Pathmark. He left there for another friend's house and then took a cab to visit another friend.

3

> Later that day, defendant was driving the Escalade when he was
> stopped by the police for a traffic violation. The car was impounded
> for ten days. He retrieved it and then sold it in Virginia.

*State v. Browne*, No. A-2874-16, 2019 WL 3315600, at *1–2 (N.J. Super. Ct. App. Div. July 24,

2019). The Appellate Division recounted that Petitioner was indicted for first-degree murder

(count one); and third-degree endangering an injured victim (count two). *Id.* at *2. A jury

convicted him of the lesser included offense of manslaughter. *Id.* The State dismissed the second

count of the indictment. *Id.*

## II.    <u>PROCEDURAL HISTORY</u>

Prior to imposing sentence, the trial court granted the State's motion under N.J. Stat. §

2C:44-3(a) for a discretionary extended term based on Petitioner's status as a persistent offender.

*Browne*, 2019 WL 3315600, at *2. Petitioner was sentenced on December 22, 2016. *Id.* The

sentence was an eighteen-year term of incarceration with an eighty-five percent period of parole

ineligibility under the No Early Release Act ("NERA"). *Id.* Petitioner filed a direct appeal to the

Appellate Division, raising the following arguments. *Id*. at 2.

> <u>POINT ONE</u>: THE TRIAL COURT ERRED BY PRESENTING
> THE FLIGHT CHARGE TO THE JURY OVER THE OBJECTION
> OF DEFENSE COUNSEL.
>
> <u>POINT TWO</u>: THE TRIAL COURT ERRED IN REFUSING TO
> PERMIT A DEFENSE (ALIBI) WITNESS TO TESTIFY.
>
> <u>POINT THREE</u>: THE COURT ERRED IN REFUSING TO
> ALLOW TESTIMONY ABOUT THE 911 CALL ON
> DECEMBER 30, 2012 REGARDING THE DOMESTIC
> VIOLENCE.
>
> <u>POINT FOUR</u>: THE TRIAL COURT ERRED BY IGNORING
> STRONG MITIGATING FACTORS IN DEFENDANT'S FAVOR
> AT SENTENCING.

4

> POINT FIVE: THE COURT ERRED IN IMPOSING A
> DISCRETIONARY EXTENDED SENTENCE UNDER THE
> FACTS OF THIS CASE.
>
> POINT SIX: THE SENTENCE WAS EXCESSIVE AND THE
> COURT ERRED BY IMPOSING A DISCRETIONARY
> EXTENDED SENTENCE BECAUSE THE STATUTORY
> REQUIREMENTS WERE NOT MET.

Petitioner raised the following additional argument in his supplemental brief.

> POINT ONE: EVEN IF ANY ONE OF THE COMPLAINED-OF-
> ERRORS WOULD BE INSUFFICIENT TO WARRANT
> REVERSAL OF THE CONVICTION THE CUMULATIVE
> EFFECT OF THOSE ERRORS WAS TO DENY DEFENDANT
> DUE PROCESS AND A FAIR TRIAL.

*Browne*, 2019 WL 3315600, at *2.

The Appellate Division rejected these arguments and affirmed Petitioner's conviction and sentence on July 24, 2019. *Browne*, 2019 WL 3315600, at *1. Petitioner sought certification from the Supreme Court of New Jersey . (ECF No. 7-2, at 85–86.) On January 17, 2020, the Supreme Court summarily denied certification. *State v. Browne,* 222 A.3d 1093 (N.J. 2020) (unpublished table decision).

Petitioner filed a *pro se* petition for post-conviction relief ("PCR") on May 6, 2020, alleging ineffective assistance of trial and appellate counsel. (ECF No. 7-3, at 75–81.) Appointed counsel filed a supplemental petition on December 20, 2020. (*Id*. at 1–14.) The court heard oral argument on  January 27, 2021, and denied the PCR petition in a written opinion on June 29, 2021. (*Id*. at 83–93.) Petitioner thereafter filed a notice of appeal. (*Id*. at 94–97.) On appeal, Petitioner raised the following issues:

> POINT ONE: DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO COMPLY WITH THE COURT RULES REGARDING NOTICE OF AN ALIBI WITNESS, AND FOR FAILING TO PRESENT AVAILABLE PROOF OF MITIGATION AT TIME OF SENTENCE.
>
> (a)    APPLICABLE LAW.
>
> (b)    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO COMPLY WITH COURT RULES GOVERNING THE NOTICE OF AN ALIBI WITNESS.
>
> (c)    DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S FAILURE TO PRESENT EVIDENCE OF DEFENDANT'S COOPERATION WITH LAW ENFORCEMENT AS MITIGATION AT THE TIME OF SENTENCE.

*State v. Browne*, No. A-0212-21, 2022 WL 16732377, at *2 (N.J. Super. Ct. App. Div. Nov. 7, 2022).

On November 7, 2022, the Appellate Division affirmed substantially for the reasons expressed in the PCR court's opinion. *Browne*, 2022 WL 16732377, at *3. The Supreme Court of New Jersey denied certification on January 27, 2023. *State v. Browne*, 288 A.3d 451 (N.J. 2023) (unpublished table decision).

On December 28, 2023, Petitioner filed the instant *pro se* habeas petition. (Pet., at 1–16.) Respondents filed an answer opposing relief on May 9, 2024. (Opp'n, at 1–25.) On July 12, 2024, Petitioner filed a reply. (Reply, at 4–26.)

## III.    **LEGAL STANDARD**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. § 2254, a district court "shall entertain

6

an application for writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).

Moreover, district courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the "'last reasoned' decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009). Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "Clearly established federal law for

purposes of [section 2254(d)(1)] includes only the holdings, as opposed to the dicta of the United States Supreme Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). Even a summary adjudication without explanation by the state court on the merits of a claim is entitled to section 2254(d) deference. *Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002). The state court is not required to cite or even have an awareness of governing Supreme Court precedent "so long as neither the reasoning nor the result of [its] decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *Jamison v. Klem*, 544 F.3d 266, 274–75 (3d Cir. 2008).

The Third Circuit has held that the "unreasonable application" of clearly established Supreme Court precedent encompasses three distinct scenarios: "(1) the state court extends Supreme Court precedent to cover a new factual context in which application of the precedent is unreasonable; (2) the state court unreasonably fails to apply a precedent in a factual context that warrants its application; or (3) the state court applies the correct precedent, but unreasonably in light of the facts of the case before it." *Jamison*, 544 F.3d at 274-75 (quoting *Matteo v. Superintendent*, 171 F.3d 877, 887 (3d Cir. 1999).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Duncan v. Morton*, 256 F.3d 189, 196 (3d Cir. 2001) (*citing Taylor*, 529 U.S. at 412–13)). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state

courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316.

Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable." *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

Finally, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Haines v. Kerner,* 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. *See Royce v. Hahn,* 151 F.3d 116, 118 (3d Cir.1998); *Lewis v. Attorney General,* 878 F.2d 714, 721–22 (3d Cir.1989); *United States v. Brierley,* 414 F.2d 552, 555 (3d Cir.1969), *cert. denied,* 399 U.S. 912 (1970). Thus, because Petitioner is proceeding as a *pro se* litigant in this matter, the Court will accord his petition the liberal construction intended for *pro se* petitioners.

## IV.    <u>DISCUSSION</u>

Petitioner presented his claims to the Appellate Division and to the Supreme Court of New Jersey on both direct appeal and post-conviction review. As the Supreme Court of New Jersey summarily denied each petition for certification, the Appellate Division's opinions constitute the "last reasoned" decision of the state courts addressing these claims. *See Simmons*, 590 F.3d at

9

231–32.  Accordingly, this Court applies AEDPA deference to the Appellate Division's decisions.
*See id.*

### A.    Ground One: Exclusion of Alibi Witness

In Ground One, Petitioner argues that the trial court's exclusion of Sharo Willis's
("Willis") testimony, offered as a partial alibi witness, violated his Sixth Amendment right to
compulsory process.  (Pet., at 5.)  Respondents counter that Willis's belated willingness to
cooperate—four weeks into trial—justified the trial court's refusal to permit her testimony, that
the state courts correctly applied the governing standard, and that Petitioner raises no cognizable
federal claim.  (Opp'n, at 16, 24.)

A federal court may entertain a habeas petition only if the petitioner is "in custody in
violation of the Constitution or laws or treaties of the United States."  *Swarthout v. Cooke*, 562
U.S. 216, 219 (2011) (citing *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010)); *see also* 28 U.S.C. §
2254(a).  Claims challenging the admissibility of evidence generally raise questions of state law,
which are not cognizable on federal habeas review.  *Keller v. Larkins*, 251 F.3d 408, 416 n.6 (3d
Cir. 2001); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("It is not the province of a
federal habeas court to reexamine state-court determinations on state-law questions.").  Thus,
habeas relief is unavailable for state law evidentiary rulings unless those rulings rise to the level
of a due process violation.  *Estelle*, 502 U.S. at 70 ("the Due Process Clause guarantees
fundamental elements of fairness in a criminal trial") (quoting *Spencer v. Texas*, 385 U.S. 554,
563–64 (1967)).

Because "[t]he Due Process Clause does not permit the federal courts to engage in a finely-
tuned review of the wisdom of state evidentiary rules," *Marshall v. Lonberger*, 459 U.S. 422, 438

n.6 (1983), a petitioner must show that an evidentiary error was so pervasive as to deny him a fundamentally fair trial. *See Keller*, 251 F.3d at 413. The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). In other words, "[i]n order to satisfy due process, [Petitioner's] trial must have been fair; it need not have been perfect." *Glenn*, 743 F.3d at 407 (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). A due process violation arises from an evidentiary ruling only if that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12–13 (1994)).

On direct appeal, the Appellate Division held that the trial court acted within its discretion in precluding Willis's testimony. *Browne*, 2019 WL 3315600, at *3. The court analyzed the claim as follows:

> Defendant argues the trial court erred by not permitting him to call Sharo Willis as a witness. Defendant claims her testimony would have provided him with an alibi for the time period when the victim was being abandoned near the U-Haul. She was expected to testify defendant was at her house during that time.
>
> We review a trial court's evidential rulings for abuse of discretion. *Hisenaj v. Kuehner*, 194 N.J. 6, 12 (2008). We give "[c]onsiderable latitude" to the trial court "in determining whether to admit evidence and that determination will be reversed only if it constitutes an abuse of discretion." *State v. Feaster*, 156 N.J. 1, 82 (1998). Under this standard, we will not substitute our own judgment for that of the trial court, unless "the trial court's ruling 'was so wide of the mark that a manifest denial of justice resulted.'" *State v. Marrero*, 148 N.J. 469, 484 (1997) (quoting *State v. Kelly*, 97 N.J. 178, 216 (1984)).

11

The State rested its case on September 22, 2016, subject to rebuttal. Defendant raised this alibi issue for the first time on September 28, 2016. Willis' name had not been given to the State as a witness. The defense previously advised the State that it would not be calling alibi witnesses. Defense counsel explained to the court that he recently gained Willis' cooperation for an interview, and now was requesting to call her as a witness. The State opposed the request.

The trial court denied the application because "in week four of the trial, there's now a partial alibi witness whose name was not on the witness list, no information regarding the woman has been furnished to the State ...." The court found that there was prejudice to defendant but "greater prejudice" to the State because it was deprived of the opportunity to interview the witness, speak with her or present its case knowing there was an alibi witness. Defendant had the opportunity to provide notice of the alibi consistent with the Rules. The court would not impose a less severe sanction because the jury had been empaneled for four weeks, there were issues about losing two jurors and only two alternates remained. The court found the failure to comply with the Rules was willful and intended by the defense to gain an advantage. The defense had two opportunities to name alibi witnesses and had not done so.

Under Rule 3:12-2(a), defendant was to provide notice to the State if he "intend[ed] to rely in any way on an alibi ...." Defendant contends that Willis is a fact witness, but it was clear he intended to offer her as an alibi witness to explain that defendant was not present when the victim was abandoned at the U-Haul lot. The Rule expressly applies to any potential alibi testimony.

Where part "a" of the Rule is violated, part "b" permits the trial court to "refuse to allow the party in default to present witnesses at trial as to defendant's absence from or presence at the scene of the alleged offense" or the court can adjourn or delay the trial "as the interest of justice requires." R. 3:12-2(b). In applying part "b," a trial court is to consider:

    (1) the prejudice to the State;

    (2) the prejudice to the defendant;

    (3) whether other less severe sanctions are available to preserve the policy of the rule, such as a continuance or a mistrial to permit

the State to investigate the alibi; and

(4) whether the defendant's failure to give notice was willful and intended to gain a tactical advantage.

[*State v. Bradshaw*, 195 N.J. 493, 507-08 (2008).]

Although defendant argues that *Bradshaw* should not apply because the alibi did not relate to the time period when the victim was being assaulted, this is wrong because the Rule applies where defendant "intend[ed] to rely in any way on an alibi ...." R. 3:12-2(a). The trial court considered all of the Bradshaw factors. It did not abuse its discretion by denying the defendant's request.

*Browne*, 2019 WL 3315600, at *2–3.  The Appellate Division also noted in a footnote that although Petitioner invoked the Sixth Amendment in his reply brief, it declined to address that argument separately because it was not previously raised in the formal brief.  *See Browne*, 2019 WL 3315600, at *3, n.3 (citing N.J. Ct. R. 2:6-5).

"Federal habeas courts reviewing convictions from state courts will not consider claims that a state court refused to hear based on an adequate and independent state procedural ground."  *Davila v. Davis*, 582 U.S. 521,  524 (2017).  New Jersey Court Rule 2:6-5, which precludes the use of a reply brief to add issues not previously raised, constitutes an independent and adequate state procedural ground that bars federal habeas review.  *See Coleman v. Thompson*, 501 U.S. 722, 729–30 (1991) (Federal habeas relief is barred where the state court denies a claim on an independent and adequate state procedural ground).  Petitioner contends that his Compulsory Process claim was properly raised in his merits brief, and expounded upon in his reply brief. (Reply, at 11.)

Assuming arguendo that the Sixth Amendment argument was included in the opening brief, the Appellate Division expressly declined to consider it when reasserted in reply.  *See Browne*,

2019 WL 3315600, at *3, n.3 (citing N.J. Ct. R. 2:6-5). The state court's enforcement of Rule 2:6-5 constitutes an independent and adequate state procedural ground that bars federal habeas review. *See Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (The "plain statement" rule requires that a federal habeas court will not treat a claim as procedurally defaulted unless the last state court to issue judgment clearly and expressly indicates that its decision rests on a state procedural bar). Petitioner has shown neither cause for the default nor prejudice. The claim is therefore procedurally barred.

Even if the Court were to reach the merits, Petitioner would not be entitled to relief. Under 28 U.S.C. § 2254(d), district courts must defer to the state court's adjudication on the merits unless it was contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The Supreme Court has interpreted the Compulsory Process clause to encompass a criminal defendant's right to present witnesses and evidence in his defense, "even though [such a right] is not expressly described in so many words." *Gov't of Virgin Islands v. Mills*, 956 F.2d 443, 445 (3d Cir. 1992) (quoting *Taylor v. Illinois*, 484 U.S. 400, 409 (1988)). The exclusion of evidence implicates the Sixth Amendment only where the defendant demonstrates that the testimony was both material and favorable to his defense. *Id.* at 446 (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982)). Even where testimony is material and favorable to the defense, clearly established federal law recognizes that the right to present witnesses is subject to reasonable restrictions, including compliance with rules governing discovery and trial management. *See*

14

*Taylor*, 484 U.S. at 410–16 (holding that a trial judge's refusal to permit an undisclosed witness to testify, as a sanction for nondisclosure, does not violate the Compulsory Process clause).

Here, the record reveals that Petitioner proffered Willis's testimony during the fourth week of trial after counsel met with her the previous evening. (13T:3–19 to 4–16, 13–3 to 14–9.)[1] Three weeks prior, defense counsel submitted, and later withdrew, Willis as a witness on the basis that there would be no alibi. (*Id.*) The trial court applied the state rule requiring disclosure of alibi witnesses and determined that failure to comply with the New Jersey Court Rule 3:12-2 was willful and intended by the defense to gain an advantage. (13T:27–1 to 28–5.) As a sanction for noncompliance, the court excluded Willis's testimony. (*Id.*) That finding parallels the circumstances in *Taylor* and supports exclusion under clearly established federal law. *See Taylor*, 484 U.S. at 410–16. The Appellate Division's affirmance was therefore not contrary to or an unreasonable application of *Taylor*.

Moreover, Petitioner has not demonstrated that Willis's testimony was material and favorable. *See Valenzuela-Bernal*, 458 U.S. at 867. Willis's proffered testimony would have accounted for Petitioner's whereabouts during a limited period when the victim was abandoned at the U-Haul lot. It would not have addressed other critical aspects of the State's case, including eyewitness accounts of Petitioner's participation in the beating and subsequent disposal of the body. Excluding such partial alibi evidence did not deprive Petitioner of a fundamentally fair trial. *See Bisaccia v. Att'y Gen. of N.J.*, 623 F.2d 307, 312 (3d Cir. 1980) (holding that on habeas review,

---

[1] 13T = Transcript of Trial, dated September 28, 2016; ECF No. 7-16.

evidentiary errors of state courts are not of constitutional dimension unless they deprived the defendant of fundamental fairness at trial).

Accordingly, Ground One is procedurally barred.  In the alternative, the Appellate Division's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  The exclusion of Willis's testimony did not violate Petitioner's rights under the Sixth Amendment or the Due Process clause.  Habeas relief on Ground One is denied.

### B.    Ground Two: Ineffective Assistance of Counsel

In Ground Two, Petitioner asserts a Sixth Amendment violation based on trial counsel's failure to comply with the New Jersey Court Rule regarding notice of an alibi witness.  (Pet., at 9.) Petitioner contends that counsel's ineffectiveness resulted in the trial court excluding the testimony of Sharo Willis.  (*Id.*)  Respondents counter that Petitioner has not shown that the state court's ruling was contrary to, or an unreasonable application of, the standard established in *Strickland*. (Opp'n, at 19.)

The United States Constitution guarantees the right of assistance of counsel to every person accused of a crime.  U.S. Const. amend. VI.  "[T]he Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial."  *Strickland*, 466 U.S. at 684. "The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause:

> 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against

16

him; to have compulsory process for obtaining witnesses in his favor,
and to have the Assistance of Counsel for his defence.'"

*Id.* at 684–85.  To support an ineffective assistance of counsel claim under *Strickland*, a petitioner

must first show counsel's performance was deficient.  *Id.* at 687.  "This requires [the petitioner to

show] that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Id.*; *see also United States v. Shedrick*, 493 F.3d 292, 299

(3d Cir. 2007).  In evaluating whether counsel was deficient, the "proper standard for attorney

performance is that of 'reasonably effective assistance.'"  *Jacobs v. Horn*, 395 F.3d 92, 102 (3d

Cir. 2005).  A petitioner asserting ineffective assistance must show counsel's representation "fell

below an objective standard of reasonableness" under the circumstances.  *Id.*  The reasonableness

of counsel's representation must be determined based on the particular facts of a petitioner's case,

viewed as of the time of the challenged conduct of counsel.  *Id.*  In scrutinizing counsel's

performance, courts "must be highly deferential . . . a court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*,

466 U.S. at 689.

A petitioner also must affirmatively demonstrate that counsel's allegedly deficient

performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial ... whose

result is reliable."  *Strickland*, 466 U.S. at 687, 692–93; *Shedrick*, 493 F.3d at 299.  "It is not

enough for the defendant to show that the errors had some conceivable effect on the outcome of

the proceeding."  *Strickland*, 466 U.S. at 693.  The petitioner must demonstrate "there is a

reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would

have been different.  A reasonable probability is a probability sufficient to undermine confidence

in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. "Because failure to satisfy either [*Strickland*] prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002) (quoting *Strickland*, 466 U.S. at 697–98).

Errors that undermine confidence in the fundamental fairness of the state adjudication, including deprivation of the right to the effective assistance of counsel, justify the issuance of the federal writ of habeas corpus. *Taylor*, 529 U.S. at 375. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). *Harrington*, 562 U.S. at 105. When Section 2254(d) applies, "the question is not whether counsel's actions were reasonable" rather the question is "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* More specifically, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Id.* at 101. "This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Id.* "Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court." *Id.*

During the fourth week of trial, defense counsel proffered Willis as a witness to testify that Petitioner went to her home while the co-defendants transported the body. (13T:13–3 to 23.) The trial court rejected this request on the following basis:

> THE COURT: All right. All right. I've heard enough. All right. I find there would be prejudice to the defendant, however, I find there would be far greater prejudice to the State to allow the witness to

18

testify. Certainly, the Court has done everything to accommodate a late alibi. I addressed the alibi notice that was submitted on or about September the 5th or 6th. I afforded opportunity for the defendant to provide a notice, a written statement of alibi mid jury selection. That was not complied with. In fact, the Court, as well as the State, was advised they were withdrawing the alibi notice.

In terms of less severe sanctions, the only possibility that I could see that would be reasonable with some type of continuance –- however, I don't see that time permits that. We have a jury that has been empaneled. They have been empaneled now going on to their fourth week. Some of these jurors at least for four weeks. Others are into the third week of jury service. They were told the trial would be concluding this week. I'm already advised I have issues with at least two jurors. There's only two alternates. In all likelihood, unless things have changed, we're going to be down to one alternate by the end of the day. And we're going to interview that juror before we go any further.

Certainly, in terms of the fourth factor, whether defendant's failure (indiscernible) was willful and intended. The withdrawal of the alibi speaks volumes as to what Mr. Browne's intentions were here. He put it out there when he was held to the mandates of the rule. He pulled it back, let the State proceed with their case and now drops it on them in the second day of his case as it's about to conclude.

There's no other interpretation that it was done willful, it was intended to gain an advantage. Knowing now that some three or four years ago there may have been cameras that could have been obtained, video recordings that could have been obtained, all of this could have been turned over in the inception of this case when there was a demand made for an alibi, a bill of particulars, as is customary in every discovery packet that is provided. And it continues to be customary.

And I have given Mr. Browne the benefit of multiple attorneys, multiple substitutions, everything to allow the opportunity to have an effective defense. There has been more than ample opportunity to provide the State, at minimum, the name of the alibi witness. Not required to prior to the time period within the rule, but we're now on the last day of the trial. Two days. There's no time for a continuance. The jury has been sworn. I'm not going to declare a mistrial and restart this case. Not going to happen. Based on

19

weighing all the factors, I'm going to preclude the witness from testifying.

(13T:25–25 to 28–5.)

Petitioner raised this claim on post-conviction review ("PCR"). (ECF No. 7-3, at 1–14.) The petition was denied by way of written opinion, and order, dated June 29, 2021. (*Id*. at 82–93.) Petitioner appealed. (*Id*. at 94–97.) The Appellate Division affirmed for substantially the same reasons expressed by the PCR court, adding the following comments for amplification:

> Having considered the arguments raised on this appeal pursuant to these principles, we affirm substantially for the reasons expressed in Judge Young's thorough and well-written opinion. We add the following comments. Notwithstanding the late notice of alibi, we are unconvinced trial counsel was ineffective because even if the alibi notice was timely made, it would not have affected the outcome considering the witness would not cooperate and her testimony would not have exculpated defendant. Counsel was not ineffective at sentencing, because defendant described his cooperation with law enforcement in unrelated matters at the sentencing hearing, which did not convince the judge to apply the mitigating factor considering he found "the aggravating factors substantially and completely outweigh the lack of any mitigating factors in this case." Having previously affirmed the sentence, we are likewise unconvinced defendant's cooperation would have led to a different outcome sentence-wise. Finally, appellate counsel was not ineffective for not raising these arguments on appeal because we are unpersuaded we would have decided the case differently given the gravity of defendant's offense and the substantial evidence supporting his conviction.

*Browne*, 2022 WL 16732377, at *3.

The state court's determination was not contrary to, nor an unreasonable application of, *Strickland*. To prevail, Petitioner must demonstrate both that counsel's performance was deficient, and he was prejudiced as a result. *Strickland*, 466 U.S. at 694. Courts apply a "highly deferential" review of counsel's performance, presuming that counsel acted within the range of reasonable

20

professional assistance.  *Id*. at 689.

As previously noted, every person accused of a crime has a fundamental right to present witnesses in his own defense.  *Taylor*, 484 U.S. at 408 (citing *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973).  That right, however, is not unlimited and remains subject to reasonable restrictions.  *Id*. at 410–16.  The state has a strong interest in the orderly presentation of evidence that will assist a trier of fact to ascertain the truth, including "protecting itself against an eleventh-hour defense."  *Id.* at 411.  Consistent with that interest, New Jersey Court Rule 3:12-2 requires  a defendant who intends to rely on an alibi to provide a signed statement, within 10 days of a written demand by the prosecutor, identifying the place or places where defendant claims to have been at the time of the alleged offense and the names and addresses of alibi witnesses.  N.J. Ct. R. 3:12-2(a).  Upon noncompliance, the Rule authorizes the court to preclude the party in default from presenting witnesses at trial.  N.J. Ct. R. 3:12-2(b).

The Supreme Court has upheld the constitutionality of such notice-of-alibi rules, holding that their application does not deprive a defendant of due process, a fair trial, or the privilege against self-incrimination.  *Williams v. Florida,* 399 U.S. 78, 82 (1970).  The Supreme Court explained that Due Process permits a state evidentiary rule that promotes the truth-seeking function of trial by ensuring both parties an adequate opportunity to investigate facts essential to determining guilt or innocence.  *Id.*

To establish prejudice, Petitioner is required to show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 694.  He has not made that showing.

As the Appellate Division observed, even a timely alibi notice would not have altered the

outcome. *See Browne*, 2022 WL 16732377, at *3. First, the witness was unwilling to cooperate until the fourth week of trial, where she provided defense with new information on the eve of her proposed testimony. (13T:6–24 to 7–13.) Second, her limited testimony would not have exculpated Petitioner. At most, it would have accounted for Petitioner's whereabouts during a limited period when the victim's body was being transported, but it would not have exculpated him from the underlying charges. (13T:13–3 to 23.)

Under the AEDPA, "the question is not whether counsel's actions were reasonable." *Harrington*, 562 U.S. at 105. Rather, it is whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Here, the Appellate Division's holding was a reasonable application of *Strickland*.

Assuming arguendo that counsel's handling of the alibi notice fell below professional norms, Petitioner cannot establish prejudice. *See Cross*, 308 F.3d at 315 (failure to satisfy either *Strickland* prong defeats an ineffective assistance claim). Accordingly, Ground Two fails to establish ineffective assistance under *Strickland*. The Appellate Division's decision was not contrary to, nor an unreasonable application of, clearly established federal law. Habeas relief on Ground Two will therefore be denied.

## III.    CERTIFICATE OF APPEALABILITY

This Court must next determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. 28 U.S.C. § 2253(c).

For the reasons discussed above, this Court's review of the claims advanced by Petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue. Therefore, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2254(b)(1)(A).

## IV.   CONCLUSION

For the reasons discussed above, the Court will deny habeas relief and will not issue a certificate of appealability. An appropriate Order follows.

Date: October 22, 2025

         *__/s/ Jamel K. Semper__*
         **HON. JAMEL K. SEMPER**
         **UNITED STATES DISTRICT JUDGE**